UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EL PASO MERCHANT ENERGY – PETROLEUM COMPANY, | ) | |
| And | ) | |
| COASTAL ARUBA REFINING COMPANY, N.V., | ) | |
| And | ) | |
| COASTAL EAGLE POINT OIL COMPANY, | ) | No. 02-1094 C (Judge Block) |
| And | ) | |
| PACIFIC REFINING COMPANY, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

For their First Amended Complaint, Plaintiffs El Paso Merchant Energy – Petroleum Company, Coastal Aruba Refining Company, N.V., Coastal Eagle Point Oil Company, and Pacific Refining Company allege as follows:

**INTRODUCTION**

1. Plaintiffs entered a series of contracts with the United States government for the purchase of fuel.

2. The contracts contained a price adjustment clause that permitted the government to change the price it paid for fuel by as much as 100 percent of the contract price.

3. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the government's price adjustment clause was illegal.

4. The government profited from its illegal price adjustment clause by materially underpaying Plaintiffs and then denied Plaintiffs' claims for relief.

5. Plaintiffs seek here to be made whole for the government's violation of the law.

**THE PARTIES**

6. Plaintiff El Paso Merchant Energy – Petroleum Company is a Delaware corporation with its principal place of business in Houston, Texas. El Paso Merchant Energy -- Petroleum Company previously was known as Coastal Refining & Marketing, Inc.

7. Plaintiff Coastal Aruba Refining Company, N.V., is an Aruba corporation with its principal place of business in San Nicolas, Aruba.

8. Plaintiff Coastal Eagle Point Oil Company is a Delaware corporation with its principal place of business in Houston, Texas.

9. Plaintiff Pacific Refining Company is a California general partnership with its principal place of business in Houston, Texas.

10. During the period at issue, Plaintiffs were wholly-owned affiliates of The Coastal Corporation, which subsequently was acquired by El Paso Corporation. Plaintiffs hereafter are referred to collectively as "Coastal," except where individually identified.

11. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. During part of the period at issue, DESC was known as the Defense Fuel Supply Center; however, Defendant is referred to as "DESC" throughout.

## JURISDICTION

12. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002), 41 U.S.C. §§ 601-13 (2002), and U.S. Const. amend. V.

## STATEMENT OF THE CASE

### I. THE CONTRACTS

13. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

14. From 1982 to 1999, Coastal and DESC entered a series of long-term contracts for the purchase of approximately $3 billion of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States and Aruba.

15. Coastal's contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause permitted DESC to change the monthly price it paid Coastal for fuel by as much as 100 percent of the contract price.

16. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Coastal against market fluctuations, and, second, to ensure that the prices DESC paid Coastal for military fuels under the long-term contracts reflected at least fair market value.

17. DESC's price adjustment clause permitted DESC to adjust the prices it paid Coastal for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM Indexes").

18. Contrary to the acknowledged purposes of DESC's price adjustment clause, the Department of Energy did not design or intend for the PMM Indexes to be used to set or adjust prices in response to market fluctuations, and the PMM Indexes did not reflect the market value for the military fuels DESC purchased.

19. As a result of DESC's use of the PMM Indexes in its price adjustment clause, DESC paid Coastal prices for fuel that were materially below fair market value.

20. DESC used the PMM Indexes in its price adjustment clause in contravention of the acknowledged purposes of the clause, and despite knowing that the PMM Indexes were not designed to set or adjust prices in response to market fluctuations, and despite knowing that the PMM Indexes did not reflect fair market value.

21. DESC also used other price indexes in its price adjustment clause to make price adjustments. On information and belief, DESC knew that some of the other price indexes it used to set or adjust prices were not appropriate for these purposes.

## II. DESC'S ILLEGAL PRICE ADJUSTMENT CLAUSE

22. DESC's price adjustment clause was illegal.

23. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the Federal Circuit held that the same price adjustment clause DESC used in Coastal's contracts violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. Instead, DESC illegally based price adjustments on price indexes, such as the PMM Indexes, which resulted in prices that were materially below fair market value.

24. DESC violated the law in other respects in awarding and administering Coastal's contracts. DESC violated the Office of Federal Procurement Policy Act and its implementing regulations by using illegal auction techniques, at least after July 16, 1989. DESC awarded

Coastal's contracts in violation of DOD Federal Acquisition Regulation ("DFAR") pt. 219, by improperly soliciting and awarding portions of the procurements set aside for small and small disadvantaged businesses. DESC violated the equal protection component of the Fifth Amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling government interest.

25. DESC violated the law knowingly.

26. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid for fuel below fair market value.

27. DESC profited from violating the law by paying Coastal materially less than fair market value for the fuel DESC purchased.

## III. <u>COASTAL'S CERTIFIED CLAIMS</u>

28. Pursuant to the Contract Disputes Act, Coastal submitted certified claims to DESC's contracting officer seeking relief from DESC's violation of law in awarding and administering Coastal's contracts.

29. El Paso Merchant Energy – Petroleum Company submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-84-D-0501 | September 20, 2000 |
| DLA600-88-D-0495 | September 20, 2000 |
| DLA600-88-D-0578 | September 20, 2000 |
| DLA600-88-D-0622 | September 20, 2000 |
| DLA600-89-D-0481 | September 20, 2000 |

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-89-D-0543 | September 20, 2000 |
| DLA600-89-D-0565 | September 20, 2000 |
| DLA600-90-D-0479 | September 20, 2000 |
| DLA600-91-D-0505 | September 20, 2000 |
| DLA600-92-D-0486 | September 20, 2000 |
| DLA600-93-D-0495 | September 20, 2000 |
| DLA600-94-D-0477 | September 20, 2000 |
| DLA600-94-D-0547 | September 20, 2000 |
| SPO600-95-D-0463 | September 20, 2000 |
| SPO600-96-D-0478 | September 20, 2000 |
| SPO600-97-D-0478 | September 20, 2000 |
| SPO600-98-D-0465 | September 20, 2000 |
| DLA600-83-D-0512 | November 30, 2000 |
| DLA600-83-D-0525 | November 30, 2000 |
| DLA600-83-D-0562 | November 30, 2000 |
| DLA600-84-D-0590 | November 30, 2000 |
| DLA600-88-D-0611 | November 30, 2000 |
| DLA600-88-D-0631 | November 30, 2000 |
| DLA600-89-D-0506 | November 30, 2000 |
| DLA600-89-D-0510 | November 30, 2000 |
| DLA600-89-D-0530 | November 30, 2000 |
| DLA600-89-D-0596 | November 30, 2000 |

| Contract | Date Submitted |
| --- | --- |
| DLA600-90-D-0452 | November 30, 2000 |
| DLA600-90-D-0470 | November 30, 2000 |
| DLA600-90-D-0561 | November 30, 2000 |
| DLA600-90-D-0577 | November 30, 2000 |
| DLA600-91-D-0490 | November 30, 2000 |
| DLA600-91-D-0517 | November 30, 2000 |
| DLA600-92-D-0474 | November 30, 2000 |
| DLA600-93-D-0524 | November 30, 2000 |
| DLA600-94-D-0459 | November 30, 2000 |
| SPO600-96-D-0518 | November 30, 2000 |
| DLA600-83-D-4307 | April 23, 2001 |
| DLA600-84-D-0485 | April 23, 2001 |
| DLA600-84-D-4255 | April 23, 2001 |
| DLA600-84-D-4512 | April 23, 2001 |
| DLA600-84-D-4614 | April 23, 2001 |
| DLA600-85-D-4006 | April 23, 2001 |
| DLA600-85-D-4282 | April 23, 2001 |
| DLA600-85-D-4482 | April 23, 2001 |
| DLA600-86-D-0584 | April 23, 2001 |
| DLA600-86-D-4190 | April 23, 2001 |
| DLA600-87-D-0518 | April 23, 2001 |
| DLA600-87-D-0553 | April 23, 2001 |

| **Contract** | **Date Submitted** |
|---|---|
| DLA600-87-D-0619 | April 23, 2001 |
| DLA600-87-D-0636 | April 23, 2001 |
| DLA600-87-D-0645 | April 23, 2001 |
| DLA600-87-D-4207 | April 23, 2001 |
| DLA600-87-D-4558 | April 23, 2001 |
| DLA600-88-D-4124 | April 23, 2001 |
| DLA600-88-D-4363 | April 23, 2001 |
| DLA600-89-D-0493 | April 23, 2001 |
| DLA600-90-D-4295 | April 23, 2001 |
| DLA600-90-D-4540 | April 23, 2001 |
| DLA600-90-D-4622 | April 23, 2001 |
| DLA600-91-D-4239 | April 23, 2001 |
| DLA600-92-D-4116 | April 23, 2001 |
| SPO600-99-D-0475 | April 23, 2001 |
| DLA600-82-D-0493 | July 6, 2001 |
| DLA600-85-D-4092 | July 6, 2001 |
| DLA600-86-D-4044 | July 6, 2001 |
| DLA600-87-D-4050 | July 6, 2001 |
| DLA600-88-D-4466 | July 6, 2001 |
| DLA600-92-D-4092 | July 6, 2001 |
| DLA600-94-D-4154 | July 6, 2001 |
| DLA600-86-D-4618 | June 25, 2002 |

| **Contract** | **Date Submitted** |
| --- | --- |
| DLA600-87-D-4500 | June 25, 2002 |
| DLA600-88-D-4401 | June 25, 2002 |
| DLA600-92-D-4160 | June 25, 2002 |
| DLA600-94-D-4097 | June 25, 2002 |
| SPO600-96-D-4013 | June 25, 2002 |

30. On June 25, 2002, El Paso Merchant Energy – Petroleum Company supplemented its certified claims brought under contract nos. DLA600-83-D-0562, DLA600-85-D-4092, DLA600-86-D-4044, DLA600-87-D-4050, DLA600-88-D-4466, and DLA600-94-D-4154.

31. Coastal Aruba Refining Company, N.V., submitted certified claims under the following contracts on the dates indicated:

| **Contract** | **Date Submitted** |
| --- | --- |
| DLA600-91-D-0530 | September 20, 2000 |
| DLA600-92-D-0487 | September 20, 2000 |
| SPO600-97-D-0479 | September 20, 2000 |
| DLA600-94-D-0480 | November 30, 2000 |
| SPO600-95-D-0476 | November 30, 2000 |
| SPO600-98-D-0466 | April 23, 2001 |
| SPO600-99-D-0476 | April 23, 2001 |
| SPO600-99-D-0508 | April 23, 2001 |

32. Coastal Eagle Point Oil Company submitted certified claims under the following contracts on the dates indicated:

| Contract | Date Submitted |
|---|---|
| DLA600-88-D-0493 | September 20, 2000 |
| DLA600-89-D-0494 | September 20, 2000 |
| DLA600-90-D-0486 | September 20, 2000 |
| DLA600-90-D-0580 | September 20, 2000 |
| DLA600-91-D-0511 | September 20, 2000 |
| DLA600-92-D-0488 | September 20, 2000 |
| DLA600-93-D-0491 | September 20, 2000 |
| DLA600-93-D-0496 | September 20, 2000 |
| DLA600-87-D-0637 | April 23, 2001 |

33. Pacific Refining Company submitted certified claims under the following contracts on the dates indicated:

| Contract | Date Submitted |
|---|---|
| DLA600-86-D-4709 | April 23, 2001 |
| DLA600-83-D-0596 | July 6, 2001 |
| DLA600-84-D-0537 | July 6, 2001 |
| DLA600-86-D-0464 | July 6, 2001 |
| DLA600-86-D-0858 | July 6, 2001 |

| Contract | Date Submitted |
|---|---|
| DLA600-87-D-0522 | July 6, 2001 |
| DLA600-89-D-0564 | July 6, 2001 |
| DLA600-81-D-0385 | June 25, 2002 |
| DLA600-81-D-0484 | June 25, 2002 |
| DLA600-83-D-0471 | June 25, 2002 |

34. On June 25, 2002, Pacific Refining Company supplemented its certified claim brought under contract no. DLA600-83-D-0596.

## IV. DESC'S FINAL DECISIONS

35. On September 4, 2001, and November 1, 2002, DESC's contracting officer issued separate final decisions denying all of Coastal's claims. DESC's September 4, 2001 final decision denied Coastal's claims under ninety-four contracts that Coastal submitted on September 20, 2000, November 30, 2000, April 23, 2001, and July 6, 2001. DESC's November 1, 2002 final decision denied Coastal's claims with respect to nine additional contracts that Coastal submitted on June 25, 2002, and with respect to seven additional contracts under which Coastal submitted supplemental claims on June 25, 2002.

36. Despite having determined the price of fuel illegally, DESC asserted in its final decisions that it had paid Coastal *exactly* fair market value for the fuel Coastal supplied under the long-term contracts. DESC denied that Coastal was entitled to any recovery and denied all of Coastal's claims.

37. In the September 4, 2001 final decision, DESC alternatively asserted that it was entitled to "re-price" the contracts subject to that decision and to recover $7,965,647.00 from Coastal.

38. Pursuant to the Contract Disputes Act, Coastal hereby timely files suit upon and appeals the entirety of DESC's September 4, 2001 and November 1, 2002 final decisions.

**COUNT I**
**(Illegality)**

39. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 38, above.

40. DESC knowingly awarded and administered each of Coastal's contracts in violation of law and regulation, *inter alia*, by basing price adjustments on price indexes, such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

41. DESC knowingly awarded and administered each of Coastal's contracts in violation of law and regulation, *inter alia*, by violating the Office of Federal Procurement Policy Act and its implementing regulations, DFAR pt. 219, and the equal protection component of the Fifth Amendment's due process clause.

42. DESC's violation of law and regulation in awarding and administering Coastal's contracts damaged Coastal.

43. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

44. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 43, above.

45. DESC knowingly awarded and administered Coastal's contracts in violation of law and regulation.

46. DESC knowingly based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

47. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

48. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM and other price indexes were not designed or intended to be used to set or adjust prices.

49. Coastal reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

50. DESC's material and/or fraudulent misrepresentations damaged Coastal.

51. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of rescission and restitution, damages, or reformation.

**COUNT III**
**(Breach of Contract)**

52. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 51, above.

53. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Coastal reasonably relied in entering the contracts.

54. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the contracts upon which Coastal reasonably relied in entering the contracts.

55. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

56. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

57. DESC's violation of law and regulation in awarding and administering the contracts constituted breach of contract.

58. DESC's use of the PMM and other price indexes to set or adjust prices under the contracts constituted breach of contract.

59. DESC's breach of contract damaged Coastal.

60. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

61. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60, above.

62. DESC knowingly awarded and administered each of Coastal's contracts in violation of law and regulation.

63. DESC's violation of law and regulation in awarding and administering Coastal's contracts rendered at least the price terms of Coastal's contracts invalid and unenforceable.

64. DESC's violation of law and regulation in awarding and administering Coastal's contracts damaged Coastal.

65. At least the pricing terms of Coastal's contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Coastal delivered to DESC.

66. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration And Frustration of Purpose)**

67. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 66, above.

68. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Coastal reasonably relied in entering the contracts and a material purpose of the contracts.

69. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Coastal reasonably relied in entering the contracts and a material purpose of the contracts.

70. DESC violated law and regulation in awarding and administering the contracts.

71. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

72. DESC's violation of law and regulation in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

73. DESC's use of the PMM and other price indexes that were not designed or intended to be used to set or adjust prices constituted a failure of consideration and frustrated the purpose of the contracts.

74. This failure of consideration and frustration of the purpose of the contracts damaged Coastal.

75. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

76. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 75, above.

77. Coastal entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Coastal reasonably relied in entering the contracts.

78. Coastal entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Coastal reasonably relied in entering the contracts.

79. DESC did not comply with law and regulation in awarding and administering the contracts.

80. DESC based price adjustments on the PMM and other price indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

81. If DESC did not knowingly award and administer contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

82. If DESC did not know that the PMM and other price indexes were not designed or intended to be used to set or adjust prices, as alleged above, then DESC must be presumed to have used the PMM and other price indexes with the intent that they were designed or intended to be used to set or adjust prices.

83. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Coastal entered and performed contracts in violation of law and regulation.

84. As a result of a mistake, DESC and Coastal entered and performed contracts using the PMM and other price indexes to set or adjust prices.

85. If DESC and Coastal had not been mistaken, DESC and Coastal would not have entered and performed contracts in violation of law and regulation.

86. If DESC and Coastal had not been mistaken, DESC and Coastal would not have entered and performed contracts using the PMM and other price indexes to set or adjust prices.

87. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Coastal's mistake and failed to meet its duty timely to disclose this mistake to Coastal.

88. If DESC was not mistaken in awarding and performing contracts using the PMM and other price indexes to set or adjust prices, then DESC knew or should have known of Coastal's mistake and failed to meet its duty timely to disclose this mistake to Coastal.

89. The parties' mutual mistake and/or DESC's failure to disclose Coastal's unilateral mistake damaged Coastal.

90. Coastal is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $306,984,294.17, plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

91. Coastal realleges and incorporates by reference the allegations set forth in paragraphs 1 through 90, above.

92. Coastal has property rights in and in relation to the fuel it delivered to DESC. In addition, Coastal has property rights in relation to DESC's procurement of the fuel Coastal delivered.

93. With no fully supporting claim of right, DESC took possession of and infringed upon Coastal's property rights in and in relation to the fuel it delivered.

94. DESC's taking of Coastal's property was for a public purpose.

95. To the extent that DESC's taking of Coastal's property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

96. DESC effected a taking of Coastal's property within the meaning of the Fifth Amendment of the United States Constitution.

97. DESC has not paid Coastal just compensation for the taking of Coastal's property.

98. DESC's failure to pay Coastal just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Coastal.

99. Coastal is entitled to recover just compensation in an amount of at least $306,984,294.17, plus interest from the time of the taking.

**PRAYER FOR RELIEF**

WHEREFORE, Coastal requests judgment as follows:

1. $306,984,294.17 plus interest, or such further amount as established prior to judgment;

2. Denial of DESC's re-pricing claim;

3. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

s/J. Keith Burt

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202)263-5208 (Fax)

Attorneys for Plaintiffs

*Of Counsel:*

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

September 26, 2003