IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EL PASO MERCHANT ENERGY PETROLEUM COMPANY et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 02-1094C (Judge Block) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' RCFC 56(f) MOTION

The United States respectfully requests that the Court deny plaintiffs' RCFC 56(f) motion to refuse defendant's motion for summary judgment or, in the alternative, for a continuance to permit discovery. We refer in this response to our Proposed Finding of Uncontroverted Fact ("PFF") and Supplemental Appendix ("SA").

STATEMENT OF THE ISSUE

1. Whether El Paso is entitled to discovery to pursue its claims that are subject to our motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(6), including its claims that:

a. the contracts at issue were illegal because their Economic Price Adjustment ("EPA") clauses were based upon "indexes rather than on Plaintiffs' own established fuel prices," "were not market-based, were not designed or intended to used to set or adjust prices, and did not reflect at least the fair market value of military fuel" (Compl. ¶ 47-48);

b. the EPA clauses violated FAR 15.802(b) (currently codified at FAR § 15.402(a)) states a claim upon which relief can be granted (Comp;. ¶ 49);

c. the use of the PMM gives rise to alternative causes of action, including "Misrepresentation," "Breach of Contract," "Implied-In-Fact-Contract," "Failure of Consideration and Frustration of Purpose," and "Mistake" (Counts II-VI).

d. the contracts at issue constituted a constitutional taking. Count VII.

2. Whether, regarding our claims pursuant to RCFC 56(f), El Paso's affidavit satisfies the requirements of RCFC 56(f), by stating with sufficient specificity *how* discovery will enable El Paso to rebut our showing of the absence of a genuine issue of fact. See Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996).

3. Whether El Paso is entitled to discovery to pursue its claims that DESC's small-business set aside program violated the equal protection provision of the Fifth Amendment, a claim which is subject to our motion to dismiss for lack of jurisdiction , pursuant to RCFC 12(b)(1).

## OVERVIEW OF PROCEEDINGS

Plaintiffs' complaint is an "everything but the kitchen sink" pleading designed to take advantage of MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405 (1992), which held that that DESC's jet-fuel contract price escalation Clause B19.33 was inconsistent with the Federal Acquisition Regulation. Subsequent to MAPCO, the FAR authority and DESC's parent issued regulations explicitly legalizing the clauses, which are in use to this day.[1] Nonetheless, before the window closed, approximately 30 DESC fuel refiners, including plaintiff, filed suit hoping to cash in on this regulatory wrinkle.

The absurdity of the entire litigation – one built upon a single decision, concerning contracts repeatedly formed, and long-ago performed, with no question about their legality or their interpretation - was thrown into dramatic relief when, in Tesoro et al. v. United States, 405 F. 3d 1339 (Fed. Cir. 2005), *petition for reh'g. en banc denied*, No. 04-5064 (Fed. Cir. Aug. 22,

[1] None of the contracts at issue in the "jet-fuel litigation" were entered into after 1999, the date of the publication of the regulation expressly authorizing market-based clauses, in the Federal Register.

2005) ("Tesoro"), the court of appeals abrogated MAPCO, holding that B19.33 had been legal all along. The court explicitly rejected the contractors' contention, repeated here, that B19.33 was illegal because it was based upon "indexes rather than on Plaintiffs' own established fuel prices;" and because it used the Department of Energy's Petroleum Marketing Monthly ("PMM") as a price reference. As our moving brief explains, the standard Tesoro established for EPA clauses also effectively disposes of El Paso's miscellaneous complaints concerning the legality of its contracts' EPA clauses, because it makes clear that the various tests El Paso would have these clauses pass simply do not apply. In fact, the court held, in order to pass muster under FAR 16.203-1, EPA clauses need only be based upon "industry-based prices," which "may be established by reference to either a catalog or market sources independent of the manufacturer or vendor." Id. at 1347.

In response, El Paso filed an amended complaint designed to bolster the alternative counts with further factual allegations and an assertion that the contracting officer had the obligation to assure El Paso was paid prices that were "fair and reasonable," pursuant to FAR 15.802(b) (currently codified at FAR § 15.402(a)) (see Compl. ¶ 49). El Paso also stubbornly clung to allegations found in its original complaint that either were squarely rejected by Tesoro, or were disguised as "common law" allegations, such as mistake, misrepresentation, and breach. The former allegations variously assert that DESC improperly based its escalation clause on a reference other than El Paso's and should not have used the PMM in any case (Tesoro's explicit holding rejected that argument); or invoke requirements found nowhere in the law (asserting that EPA clauses must be "designed or intended" to set prices and "reflect at least the fair market value of military fuel"). As our motion explains, these allegations do not invoke a proper legal

test for EPA clauses and, therefore, fail to state a claim upon which relief can be granted. In short, we have argued that, *as a matter of law* (regardless of whatever facts it may or may not find), El Paso cannot prevail.

El Paso's common-law allegations echo its "illegality" allegations, found in Count I. Although allegedly grounded in the parties' understandings and commitments, they lack an independent factual basis - one that might establish the essential unrequited promise or understanding that supposedly undergirds these allegations. Their deficiency is unsurprising, because, as our motion explains, they are but thinly-disguised restatements of the Count I complaints, which, in turn depend upon MAPCO for their vitality. Accordingly, with regard to these allegations too, our motion argued that, *as a matter of law*, there simply was no relevant fact that plaintiffs possessed or envisioned that could transform these counts into authentic common law claims.

El Paso also argued in Count I that DESC's EPA clauses were illegal because: (1) DESC's small business set-aside program violates the FAR's anti-auction provisions, and its prohibition against "awarding portions of the procurements set aside for small businesses together with those for large businesses"; and (2) DESC's small disadvantaged business program violates the equal protection component of the Fifth Amendment. Compl. ¶ 38-40. Our motion sought to dismiss these as well, *as a matter of law*. Regarding the former, we explained that we could discern no allegation of a material breach of the parties' contract. Regarding the latter allegation, we sought a dismissal pursuant to RCFC 12(b)(1), because this Court has no jurisdiction to address an equal protection claim.

Finally, El Paso argued, in Count VII, that DESC's possession of the fuel purchased

through the contracts at issue effected a taking. We moved to dismiss that count pursuant to RCFC 12(b)(6), because, *as a matter of law*, when Government action is subject to a contract, no Fifth Amendment takings may lie as a result of that action.

For an affirmative defense, we moved to dismiss the Amended Complaint, pursuant to RCFC 56, explaining that, even if El Paso's various allegations are not subject to dismissal for the reasons summarized above, we still would be entitled to summary judgment, because, years ago, El Paso abandoned any rights the FAR, the Fifth Amendment, or small business regulations might have conferred upon it. El Paso also forfeited any right it might have had to test those rights in litigation when it waited as many years as it had to file the necessary claims. In doing so, we relied upon this Court's decision in Hermes v. United States, 58 Fed. Cl. 409 (2003) ("Hermes II"). In that case, with no more discovery than has been had here, this Court found sufficient uncontroverted facts to determine that the jet-fuel contractor, on similar facts, had, indeed waived any claim it might have.

El Paso responded with a motion purportedly filed pursuant to RCFC 56(f). Following a brief introduction, the document comprises two mirror-image documents: one, presumably, the motion; the other, an affidavit from plaintiffs' counsel. Beyond their brief introductions, both documents are divided into ten sections corresponding with purported discovery needs arising from: Defendant's proposed findings of fact; the introductory portions of the Amended Complaint; the individual counts of the Amended Complaint; and defendant's affirmative defense of waiver.

Each of these sections consists, in its entirety, of two parts:

> (1) an assertion that El Paso "requires discovery [of the following] in order to present by affidavit or other sworn testimony facts

essential to its opposition." Pl. Mot. 4.[2]

(2) a wholesale quotation of either defendant's proposed findings or allegations from the Amended Complaint. E.g., Pl. Mot. 4-10. Pl. Mot. 4.

With regard to our defense of waiver, the motion and affidavits are a bit more expansive, stating, in identical terms, that El Paso "requires discovery concerning negotiation, award and performance of the fuel contracts, and concerning DESC's prices and indexes in the fuel contracts." Pl. Mot. 19; Exh. A at 16.

## SUMMARY OF THE ARGUMENT

El Paso is the claimant in this case. As such, it had the obligation to plead sufficient facts to invoke a cause of action, cognizable by this Court. It originally attempted to do so by pleading a MAPCO-style cause of action, supplemented by a series of *pro forma* alternative pleadings, invoking most imaginable contract causes of action. In Round 1 of this litigation, the parties avoided the alternative causes of action and focused on what everyone understood to be the guts of the case, the MAPCO counts. When, the court of appeals eviscerated that cause of action in Tesoro, plaintiffs amended the complaint, in an effort to spare the claim, but made little substantive change. It then insisted that discovery was necessary. However, a complaint's viability is subject to examination when it is filed, not after years of discovery. And, as our motion demonstrates, the complaint, bloated as it is, has no legal vitality. Accordingly, the time to test it, dismiss it or pare it, if necessary, is now.

[2] The affidavit upon which the motion is based is less adorned, stating only that, with respect to defendant's proposed facts, "El Paso requires discovery." Pl. Mot. Exh A at 1. With respect to allegations, the affidavit admits " El Paso requires discovery to establish the following allegations." E.g., id. at 6.

Our obligation as a movant under Rules 12(b)(1) and (6) is simply to identify legal deficiencies in the pleadings, such that "no set of facts in support of his claim which would entitle [him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Our obligation as a movant pursuant to Rule 56 is to "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Our Rule 12 motions, which affect the bulk of El Paso's Amended Complaint, seek dismissal based upon El Paso's failure either to properly invoke this Court's jurisdiction or to state a claim recognizable to the law. Under those circumstances, all the discovery in the world will not make El Paso's claim viable. Our Rule 56 motions (waiver, estoppel, any other allegation the court might consider under Rule 56 to the extent documents outside the pleadings are considered), rests upon facts so basic and so free from doubt that no effort to avoid at least an initial test of the soundness our argument can be justified under RCFC 1, this Court's "prime directive," which requires the "just, speedy, and inexpensive" resolution of all disputes. Indeed, it was this same set of facts that led the Court to conclude in Hermes II that claims such as these are barred.

Moreover, even to the extent that another fact or piece of evidence might be relevant to the resolution of this matter, El Paso has so utterly ignored the requirements of RCFC 56(f) with its robotic "it-is-alleged-therefore-it-must-be-discovered" response, that it has forfeited both its right to discovery, as well as its opportunity to explain *why* such discovery is required.

## ARGUMENT

I. Our Motion Pursuant To RCFC 12(b)(6) Should Proceed

We have moved to dismiss most counts of the Amended Complaint pursuant to RCFC 12(b)(6), which permits the dismissal of an allegation that fails to state a claim upon which relief may be granted. Dismissal upon this ground is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). RCFC 56(f) does not apply, at least directly, to Rule 12 motions, because these motions, if properly conceived, present pure questions of law.[3]

We have set forth our argument, citations to evidence, and rationale in full in our moving brief and see no point in repeating them here. Generally speaking, however, we aimed our Rule 12(b)6) motion at three categories of allegations: allegations of illegality found in Count I, the alternative or “common law” allegations found in Counts II-VI, and the takings allegation found in Count VII.

The Count I allegations fell into three subcategories:

- allegations that the contracts at issue were illegal because their Economic Price Adjustment (“EPA”) clauses were based upon “indexes rather than on Plaintiffs’ own established fuel prices” (Compl. ¶ 47);

- allegations that the contracts at issue were illegal because their EPA clauses were“were not market-based, were not designed or intended to used to set or adjust prices, and did not reflect at least the fair market value of military fuel”

---

[3] We acknowledge that, if the Court were to consider documents outside the pleadings in disposing of any particular count, the matter would be converted to one pursuant to RCFC 56. See RCFC 12(b).

(Compl. ¶ 48);

- the allegation that the EPA clauses violated FAR 15.802(b) (currently codified at FAR § 15.402(a)) (Compl. ¶ 49).

In our moving brief, we explained that the first of these allegations was squarely addressed by Tesoro, 405 F. 3d at 1348. Thus, we can easily accept the allegation as true and prevail nonetheless. Our brief also explained that the "not designed or intended to be used to set or adjust prices" criteria was not one found in the law and is completely irrelevant to the fact that the parties agreed to use it to set *their* prices. This is a legal argument concerning the sufficiency of an allegation whose truth we accepted for the sake of our motion. The remaining argument also is purely legal in nature and concerns whether FAR 15.402(a) provides contractors with a cause of action.

The "common law" arguments, we explained, were the Count I legality arguments repackaged, i.e., based upon allegations that the escalators at issue were not designed or intended to pay "fair market value," a term plaintiffs have yet to define. Nonetheless, as we explained, each of these causes of action lacked a key ingredient – basically any hint of an arrangement other than the one clearly described in the contracts and, undisputedly, fully performed as written. El Paso's suggestion that it *begin* the search for evidence of misrepresentation or mistake now is too little too late.

El Paso's takings allegation also presents an entirely legal question. Accordingly, we do not deny that DESC has the fuel at issue. And, given its complaint, El Paso is in no position to deny that the fuel was conveyed to the Government (rightly or wrongly) as a result of the contracts at issue. All that remains is the legal issue of whether a takings claim may lie when the property at issue was the subject of a contract. Accordingly, no discovery is warranted or

necessary.

II. Our Motion Pursuant To RCFC 56(b) Should Proceed

A. Introduction/Standard of Review

We moved to dismiss some of the counts pursuant to RCFC 56(b), including El Paso's complaint concerning the operation of DESC's small business set aside, and our affirmative defenses of waiver and estoppel. Summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c); accord Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1999). A factual issue is material if it could affect the outcome of the case *in light of the applicable law*. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis added). A genuine dispute exists only if a reasonable trier of fact could find for the nonmoving party. Id. The movant need not "produce evidence" of the absence of factual disputes; it need only "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). In making this determination, the Court must accept the factual allegations set forth in the complaint as true and "indulge in all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992)(quoting 2A Jeremy C. Moore, Moore's Federal Practice, ¶ 12.07 [2.-5] (2d ed. 1992)).

A litigant that requests discovery prior to responding to a motion for summary judgment must satisfy the requirements of RCFC 56(f). Specifically, it must request discovery via

affidavit and must "demonstrate specifically 'how postponement of a ruling on the motion will enable [plaintiff], by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996) (quoting Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir. 1975)); accord, e.g., Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002). Thus, the party opposing summary judgment "'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,'" Simmons Oil Corp. v. Tesoro Petroleum Corp., 86 F.3d at 1144 (quoting Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980)), and "is 'required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment.'" Simmons Oil Corp., 86 F.3d at 1144 (quoting Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1443 (5th Cir 1993)).

B. Plaintiffs' 56(f) Affidavit Fails That Rule's Standard For Relief

Here, as we have explained above, our motion challenges the materiality, not the truth, of the factual matters alleged in the Amended Complaint. El Paso's bland assertion that it needs discovery with respect to virtually every one of our proposed findings of fact, and virtually all of its own factual allegations, coupled with its assertion that it would not need discovery, were we not to challenge El Paso's allegations such as those "concerning misrepresentation and mistake" (Pl. Mot. 3) underscore El Paso's failure to grasp this distinction. We need not accept El Paso's legal conclusions (such as "mistake"), nor need El Paso accept ours. At this point, the only question is whether the allegations amount to anything, as a matter of law.

Even to the extent that other information might, in theory, exist and might relate to any aspect of our motion, El Paso has forfeited both the right to undertake discovery to hunt for that evidence and, at this point, the opportunity to explain why it needed any such evidence. As noted, El Paso's 56(f) motion and affidavit simply fail to explain *why* El Paso needs all of that discovery in light of our *legal* arguments. It simply asserts it does. As the court of appeals explained in Simmons, that is not enough, a movant is "required to state with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials would help him in opposing summary judgment." 86 F.3d at 1144. Accord Paalan v. United States, 57 Fed. Cl. 15 (2003) (discovery denied when plaintiff failed to submit "affidavit setting forth explicit reasons why discovery is needed to oppose defendant's motion for summary judgment . . . [and why] the 18 items he seeks to discover are relevant and necessary to the preparation of his opposition to defendant's motion for summary judgment").

Underpinning El Paso's blithe disregard for the requirements of RCFC 56(f) is the motion's implied belief that the Government has the burden of proof, is sitting on that proof and, once El Paso can examine it, this case may move forward. In fact, the opposite is true. Before it filed its complaint, if El Paso were serious about pursuing true common law causes of action, it bore the obligation to determine whether there were mistakes, misunderstandings, or other unrequited promises or expectancies. Yet, now we learn from El Paso's motion that it needs access to "any number of former employees" to proceed. Pl. Mot. 3. Our motion is an assertion that El Paso has no evidence or legal foundation for its case. If El Paso now acknowledges as much, it is far too late for discovery.

Further diminishing El Paso's 56(f)motion/affidavit and underscoring its true aim to

simply keep this litigation alive is El Paso's brazen insistence on discovery concerning matters obviously within its control or previously relied upon by it. See Paalan, 57 Fed. Cl. 15 (plaintiff not entitled to discovery, in part, because he was in possession of documents he sought to discover). For example, El Paso asserts that it "requires discovery" to verify our Proposed Finding of Uncontroverted Fact ("PFF") 12, which states:

> All of the DESC solicitations at issue instructed offerors to propose a "base price" for each product offered. Walker Decl. ¶ 6. As Clause B19.33 explained, the successful offeror would be paid its base price plus a periodic adjustment, based upon changes experienced by the reference price during the term of the contract. Specifically, B.19.33 provided that "[t]he prices payable under this contract for listed items shall be the base [proposal] price for the listed item increased or decreased by the same number of cents, or fraction thereof, that the reference price increases or decreases per like unit of measure from the base reference price." Exh. 6 (last page); Pl. App. 111 (part D ¶(c)). In short, the reference price was not the price the contractor received for fuel. Rather, the contractor received its offer price, adjusted monthly by the same penny for penny change (if any) experienced by the reference price.

Pl. Mot. 5 at F.

This is a simple declaration of the operation of the escalation reference publications used in the contracts at issue. DESC's use of those publications and their operation are the very foundation of this case. Accordingly, their use is alleged in plaintiffs' Amended Complaint. Compl. ¶ 10, 13. So important is that fact to *El Paso's* case, and so confident was El Paso in the indisputability of that fact, that El Paso proposed its *own* fact to that effect, in support of its opposition to our motion for partial summary judgment. See Pl. PFF ¶ 4.

Similarly, plaintiffs have refused to admit any of our proposed findings 18-25, which describe 1986 and 1987 DESC papers, in El Paso's possession, concerning escalation clauses,

including the PMM. Pl. Mot. 5-7. The proposed findings simply recited the statements from those documents. They are not material to our motion. Our point in including them was that the study also was not material to *El Paso's* case, as its Amended Complaint had suggested. Indeed, we included the documents only to counterbalance the Amended Complaint's peek-a-boo references to a DESC PMM study, which, the complaint suggests, demonstrate that DESC was aware that there was something corrupt its use of the PMM. Compl. ¶¶ 20-24. We included the actual documents in our appendix and summarized them at length to demonstrate that, in addition to there being no materiality to this innuendo, there also was no factual basis for the innuendo. Nonetheless, the essence of the PFFs are quotes from the documents, which El Paso has.[4] El Paso's motion fails to explain whether its case depends upon a different DESC study or why it cannot admit to the *contents* of these.

In any event, our motion does not depend upon the existence of these documents. It is El Paso that insists that DESC's change from the PMM makes its case. If that is so, the Court now has the documents, and can decide the question. But, for El Paso to insist that these documents support El Paso's claim, and then, when we include them with our motion, to insist it cannot admit even the document's contents, is a special kind of hubris. More importantly, it is an admission that El Paso has no case.[5]

---

[4] We are similarly mystified by El Paso's unblinking assertion that it needs discovery concerning the facts alleged in our PFF 7, 10. Pl. Mot. 4. In any event, they are not material at this point.

[5] The same can be said of PFF 12, 15, which are facts concerning the PMM clause of which El Paso is well aware. We require only the clause itself to support our motion. See Pl. Mot. 5.

C. El Paso Needs No Further Discovery Concerning The Affirmative Defenses and Small Business Allegations

In Count I, El Paso contends that DESC violated ("inter alia") the "Office of Federal Procurement Policy Act ["OFPP Act"] and its implementing regulations (and, prior to its enactment, FAR § 15.610) by using prohibited auction techniques, whereby DESC awarded contracts to bidders that agreed to match other bidders' prices." Compl. ¶ 50. El Paso also alleges that DESC violated the Defense Federal Acquisition Regulation Supplement, part 219 by "improperly soliciting and awarding portions of the procurement set aside for small businesses together with those for large businesses." Compl. ¶ 51. Yet, as explained by the contracting officer, the DESC small business set-aside procedure is substantially similar to the one set forth in the FAR. SA 1-3; see also FAR 52.219-7; SA 10.

Among other things, we cited DESCs' small business set aside clauses and the applicable FAR provision. We noted the similarities between them and the vague allegation of impropriety in the allegation, which did not explain what precisely DESC had done that was illegal. We also noted that El Paso could show no harm from the operation of this program, inasmuch as it was awarded the contracts at issue. Thus, it appeared, we had a defined program description (the DESC clause) and an established legal standard (the FAR clause), which, as we explained seemed to square. We admitted our mystification concerning El Paso's precise complaint. It is not clear why El Paso would require discovery to clarify its complaint. Its conclusory motion and affidavit do not explain. Accordingly, we see no need for further discovery.

Our affirmative defenses need be reached only if our other defenses do not succeed. Indeed, the Federal Circuit in Tesoro did not reach that issue, having credited our direct defense to the contractor's illegality count. Nonetheless, we already have succeeded once on this claim

in this Court (and also failed), with no more discovery than has been had here. Accordingly, we see no reason why further discovery is necessary in this case. Incredibly, El Paso asserts, without explanation, that it cannot admit to even our allegation that it did not complain about the monthly price adjustments to its contracts. If this were as important a matter as El Paso now asserts, one would expect that El Paso would have been complaining all along, and that it would have begun a claim file to address those complaints. The fact that El Paso cannot even contradict this basic allegation underscores how little this lawsuit has to do with any actual harm suffered by El Paso; and how truly aimless this litigation is.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court deny plaintiffs' 56(f) motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director
Commercial Litigation Branch
Civil Division
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Department of Justice
Washington, D.C. 20530
Tele: (202) 616-2311
Fax: (202) 353-7988

OF COUNSEL:

DONALD S. TRACY
Trial Attorney
Defense Supply Center Richmond
Richmond, VA 23297

HOWARD M. KAUFER
Assistant Counsel
Office of Counsel
Defense Energy Support Center
Ft. Belvoir, VA

Attorneys for Defendant

February 22, 2006

CERTIFICATE OF FILING

I hereby certify that on February 22, 2006, a copy of the foregoing document was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven J. Gillingham