IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 02-1094C
(Judge Block)

---

EL PASO MERCHANT ENERGY – PETROLEUM COMPANY,
COASTAL ARUBA REFINING COMPANY, N.V.,
COASTAL EAGLE POINT OIL COMPANY, AND
PACIFIC REFINING COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION PURSUANT TO RCFC 56(f) TO REFUSE DEFENDANT'S APPLICATION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR A CONTINUANCE TO PERMIT DISCOVERY**

---

J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208

Attorneys for Plaintiffs,
El Paso Merchant Energy – Petroleum Co.,
Coastal Aruba Refining Company, N.V.,
Coastal Eagle Point Oil Company, and Pacific Refining Company

*Of Counsel*:

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

John Loomis Shoemaker
El Paso Corporation
Suite 1839
1001 Louisiana Street
Houston, TX 77002

March 3, 2006

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................... ii

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION PURSUANT TO RCFC 56(f) TO REFUSE DEFENDANT'S APPLICATION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR A CONTINUANCE TO PERMIT DISCOVERY ....................................1

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett Ref. Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001) ..........................................6, 7

*Celotex Corp. v Catrett*, 477 U.S. 317 (1986) ....................................................................9

*Rothe Dev. Corp. v. United States Dep't of Defense*, 262 F.3d 1306 (Fed. Cir. 2001)....................6

*Simmons Oil Corp. v. Tesoro Petroleum Co.*, 86 F.3d 1138 (Fed. Cir. 1996) ................................7

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560 (Fed. Cir. 1987) .....................9

*System Fuels, Inc. v. United States*, 65 Fed. Cl. 163 (2005)..........................................................6

*Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339 (Fed. Cir. 2005) ........................................2

*Williams Alaska Petroleum, Inc. v. United States*, No. 02-705C (Fed. Cl. Nov. 18, 2003) ............9

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 159 (1979)..................................................................4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EL PASO MERCHANT ENERGY – PETROLEUM COMPANY, et al., | ) | |
| Plaintiffs, | ) | No. 02-1094C (Judge Block) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION PURSUANT TO RCFC 56(f) TO REFUSE DEFENDANT'S APPLICATION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR A CONTINUANCE TO PERMIT DISCOVERY**

In its Response, DESC struggles mightily to preclude discovery despite evidence that it knew that the PMM did not reflect fair market value, but nonetheless used it to set prices, and then misrepresented the facts to its suppliers. (See Coastal's Opp'n to DESC's Mot. to Dismiss at 4-7.)[1] So fearful is DESC of discovery, it no longer "challenges . . . the truth of the factual matters alleged in the [Second] Amended Complaint," and now concedes as "not material to our motion" its lengthy factual defense of its own prices. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 11.) DESC's eleventh-hour concessions, stipulating to the well-pleaded allegations in the Second Amended Complaint, largely withdraw DESC's request for summary judgment under RCFC 56 in favor of its request for dismissal under RCFC 12(b)(1) and 12(b)(6).

[1] DESC attempts to distinguish its own documents which state that "the PMM may have moves as much as one or two cents per gallon out of step with such interim references," which state that refiners "never know if [they] have made or lost money," and which state that "direct price comparisons are not possible" with the PMM. DESC asserts that its statements are in reality criticism of DESC's then-interim price references Platts and OPIS and not criticisms of the PMM at all. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 6-8.) DESC's assertion is nothing short of startling, given that DESC currently uses Platts and OPIS to set fuel prices. If DESC's contrived assertion has any credibility all, it at most underscores the need for Coastal's request for discovery to establish what DESC knew and when it knew it – a particularly compelling question given DESC's failure to offer evidence, by affidavit or otherwise, that the PMM reflects fair market value and given its failure to respond in any meaningful way to the dramatic demonstration by Joe Kalt and Pete Killen that the PMM fails to reflect the marketplace.

DESC's concessions expose its gamesmanship with this Court when it first proposed filing its motion and so vociferously opposed opening discovery. Had DESC disclosed to the Court what it knew at that time and now concedes – that it could not challenge the allegations in the Second Amended Complaint prior to discovery – fundamental fairness would have required that discovery proceed at that time: For DESC simply cannot prevail in seeking dismissal of the case if it concedes the truth of the facts Coastal alleges in its Second Amended Complaint.

Thus, DESC cannot credibly argue that the PMM is a "market-based reference," as *Tesoro* expressly requires,[2] if DESC concedes Coastal's allegations that the PMM does not reflect the marketplace.[3] So too, DESC cannot seek dismissal of Coastal's claims of misrepresentation if DESC concedes that it misrepresented material facts about its prices and that Coastal reasonably relied upon those representations to its detriment.[4] Nor may

---

[2] *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1347-48 (Fed. Cir. 2005). In its Reply in support of its Motion to Dismiss, DESC implicitly concedes the PMM's failure to reflect the marketplace when DESC abandons its "market sources" standard for legality and instead argues that the PMM is legal merely because the underlying data is collected by DOE and without regard to the PMM's relationship to the marketplace. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 12-13.) No matter how many different standards DESC attempts to proffer to establish the legality of the PMM, however, DESC cannot escape the word "market" in the requirement that the PMM be an "established market price." *Tesoro*, 405 F.3d at 1343. Nor, importantly, can DESC escape the need for discovery to establish the PMM's relationship to the market.

With respect to Coastal's illegality claim under FAR § 15.802, DESC asserts for the first time in its Reply that FAR § 15.802 applies only to the initial award price and not to the price DESC sets using the PMM. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 15.) This is a distinction without a difference when it is recognized that DESC has elsewhere admitted that it never intended to pay the initial award price. (See DESC's Proposed Findings of Fact ¶ 10 (Jan. 4, 2006) (the initial, or base, price "was not expected to be the price the contractor received for fuel") in *Calcasieu Ref. Company v. United States*, No. 02-1219C (Fed. Cl.).) Once again, these are facts that require discovery to establish here.

[3] See Second Amended Complaint at ¶ 18 ("PMM did not reflect at least the fair market value for military fuel").

[4] See Second Amended Complaint at ¶¶ 64, 67 (DESC "misrepresented and otherwise failed to disclose that PMM . . . did not reflect at least fair market value;" Coastal "reasonably relied upon DESC's material and/or fraudulent misrepresentations"). In its

DESC seek dismissal of Coastal's breach of contract claims if it concedes Coastal's allegations that the contracts provided for DESC to pay fair market value for fuel and that it failed to do so.[5] Similarly, DESC may not seek dismissal of Coastal's claims of mistake if it concedes that the parties were mistaken about the fact that the PMM reported changes in the volume of fuel sold as changes in price.[6] Finally, with respect to its affirmative defense of waiver, DESC cannot establish that Coastal intentionally

---

Reply in support of its Motion to Dismiss, DESC asserts that there was no misrepresentation because there is no requirement that a price adjustment clause reflect the marketplace. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 16.) The requirement that DESC's price adjustment clause reflect the marketplace arises, *inter alia*, from DESC's express representation that it did. It is DESC's knowing misrepresentation of this fact that gives rise to Coastal's misrepresentation claim, and DESC's current defense is, in essence, little more than an assertion of a right to lie to its suppliers about its prices. It is to establish these misrepresentations of fact that Coastal requires discovery.

[5] See Second Amended Complaint at ¶¶ 73, 79 ("DESC's basing price adjustments on standards [such as the PMM] . . . which reflected at least the fair market value of fuel was a material condition of the contracts;" "[i]n contravention of DESC's contractual obligations, DESC did not pay at least fair market value for military fuel"). In its Reply in support of its Motion to Dismiss, DESC baldly asserts, without citing so much as a single word of the contracts, that it has no contractual obligation to pay fair market value. Equally compelling, DESC fails to address the language of the contracts Coastal cites or DESC's own documents that expressly state that DESC's pricing clause required DESC to pay fair market value. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 17.) If DESC is to assert some as yet unidentified extra-contractual basis as a defense for failing to comply with its own contracts, Coastal is entitled to discovery to ascertain what it is.

[6] See Second Amended Complaint at ¶¶ 18-19, 123, ("DOE did not design or intend for PMM to be used to set or adjust prices [because] . . . PMM suffered from a statistical flaw known as an 'index number problem;'" "As a result of a mistake, DESC and Plaintiffs entered and performed the contracts using PMM and other indexes that were not designed or intended to be used to set or adjust prices"). DESC's assertion in its Reply in support of its Motion to Dismiss that Coastal's "mistake pleading lacks a factual premise" simply ignores, *inter alia*, the above-cited paragraphs in Coastal's Second Amended Complaint. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 18-19.) Adopting what can only be described as a head-in-the-sand defense, DESC offers no explanation or argument addressing why the parties' mistake about the fact that the PMM reported changes in the volume of fuel sold as changes in price is not a classic allegation of mistake about an existing fact at the time the contracts were entered. Once again, it is these allegations of mistake that Coastal requires discovery to establish.

relinquished a known right if DESC stipulates to Coastal's allegations that DESC misrepresented, and that Coastal was mistaken about, the material facts.[7]

In attempting to avoid the consequences of its admissions, DESC advances a fundamental conceit. DESC states, for example, that it admits the fact of misrepresentation but not its legal conclusion. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 11.) DESC may not have it both ways: Either it told the truth or it did not. *See* RESTATEMENT (SECOND) OF CONTRACTS § 159 (1979) (misrepresentation is "an assertion that is not in accord with the facts"). If DESC admits that it lied, then it cannot seek dismissal of Coastal's claims of misrepresentation; if it seeks to deny that it lied without providing any supporting evidence, then Coastal is entitled to discovery. DESC invokes a similar conceit with respect to Coastal's claims of mistake and breach of contract. In essence, DESC seeks to avoid discovery by asserting that it does not dispute the facts, but then seeks to prevail on its motion by asserting through the guise of a purported legal exception that these same facts are not true.

Ultimately recognizing its inability to contest Coastal's well-pleaded allegations without subjecting itself to full discovery of its actions, DESC resorts to misstating Coastal's Second Amended Complaint in an effort to claim that the evidence Coastal seeks is not material. DESC states that, among others, Coastal's allegations of misrepresentation, breach of contract and mistake "depend upon MAPCO for their

---

[7] See *supra* fns. 4 & 6. Indeed, DESC acknowledges that its waiver defense is incompatible with these well-pleaded allegations in the Second Amended Complaint which directly place the material elements of DESC's waiver defense at issue. Thus, DESC states: "Essentially, El Paso has defined the problem [of waiver] away by assuming that the contract is 'illegal', that it has a 'right' to receive 'fair market value', that it did not receive 'fair market value', and that, somehow, DESC knew all of this." (See DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 28.) In addition, as explained in Coastal's Opposition, DESC's further reliance on this Court's earlier decision in *Hermes* to support its waiver defense is misplaced, because that decision assumed knowledge of DESC's violation of the law, whereas here Coastal's lack of knowledge of the material facts must be assumed on the existing record. (See Coastal's Opp'n to DESC's Mot. to Dismiss at 62.)

vitality," and, therefore, *Tesoro's* rejection of *MAPCO* controls disposition of the entire case. (See DESC's Resp. to Coastal's RCFC 56(f) Motion at 4.) Once again, in its desperation, DESC simply ignores Coastal's Second Amended Complaint.

Thus, Coastal's allegation that DESC "misrepresented and otherwise failed to disclose that PMM and other indexes were not designed or intended to be used to set or adjust prices and did not reflect at least fair market value" is wholly independent from the issues of illegality addressed in *MAPCO*. (See Second Amended Complaint at ¶ 64.) These allegations of misrepresentation would stand alone had *MAPCO* never been decided and the issue of illegality never introduced into the case. The same is true for Coastal's allegations of breach of contract and mistake. (See Second Amended Complaint at ¶¶ 73, 79, 123.)[8] Indeed, in a similarly situated military fuel case, this Court found that the refiner's claims of illegality stood separately from its claims of misrepresentation, breach of contract and mistake.[9] It is ironic if not troubling that, when confronted with substantial claims of misrepresentation – claims supported by DESC's

---

[8] This is not to say that DESC's violations of law do not also give rise to claims for misrepresentation, breach of contract and mistake. They do. (See Second Amended Complaint ¶¶ 67, 76, 121.) Rather, DESC's violations of law provide only one of several separate and distinct grounds for Coastal's claims of misrepresentation, breach of contract and mistake. As set forth above, these other grounds have nothing to do with illegality or *MAPCO*.

[9] This Court recognized in its November 18, 2003 decision in *Williams Alaska Petroleum, Inc. v. United States*, 57 Fed. Cl. 789 (Fed. Cl. Nov. 18, 2003), that a decision that DESC had the authority to use market-based EPA clauses does not "resolve the case in its entirety." *Id*. at 803. As the Court stated:

> There remains to be considered plaintiffs' contention that even if DESC had the authority to use such market-based EPA clauses, these clauses were nevertheless defective because the price index they incorporated failed to ensure payment of the fair market value of the delivered fuel. In support of this argument, plaintiffs rely on various theories of recovery, including misrepresentation, breach of contract, implied-in-fact contract, failure of consideration and frustration of purpose, mistake, and Fifth Amendment taking. The court will consider these remaining issues in the next round of this litigation.

*Id*.

own documents – DESC's response is to misstate Coastal's allegations.[10] Such misstatements, however, do not provide a basis for opposing Coastal's request for discovery.[11]

---

[10] DESC's misstatements here are even more troubling given the fact that they previously were called to DESC's attention in writing. (See Sept. 15, 2005 Joint Status Report at 16 ("DESC misstates the facts when it seeks to preclude discovery on the grounds that Coastal's allegations of misrepresentation, breach of contract, failure of consideration, and mistake are premised only upon allegations of illegality.").)

[11] In its Reply in support of its Motion to Dismiss, DESC further misstates Coastal's Second Amended Complaint in seeking to avoid discovery. Thus, while DESC now concedes, as it must, that this Court has jurisdiction over an equal protection challenge to a contract, *see Rothe Dev. Corp. v. United States Dep't of Defense*, 262 F.3d 1306, 1316 (Fed. Cir. 2001), DESC adopts a new tack asserting that its ten percent minority price preference did not impact Coastal's contracts. (See DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 2, 3.) However, Coastal's Second Amended Complaint expressly alleges that its contracts were impacted by DESC's minority price preference. (See Second Amended Complaint at ¶ 33.) Thus, as Coastal explains in its Opposition, if minority-owned firms are given a ten percent price preference, all else being equal, non-minority firms must bid ten percent lower to be competitive. (See Coastal's Opp'n to DESC's Mot. to Dismiss at 14, 51.) It is the impact of DESC's minority price preference on bids by non-minority firms and the concomitant impact on the market clearing price that Coastal requires discovery to establish.

Similarly, with respect to Coastal's illegal auction claims, DESC's Reply asserts that the processes it uses in its "match price" auction of contracts to small businesses are the same processes set forth in the FAR. (See DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 24.) Coastal disputes this assertion and requires discovery to fully challenge it. Indeed, the GAO decision DESC relies upon recognizes that DESC's processes did *not* comply with the FAR, but states that DESC had a deviation authorizing those departures. (See DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 25.) To the extent that DESC seeks to invoke such a deviation, and even if such a deviation somehow could trump the express prohibitions of the OFPPA, Coastal is entitled to discovery to establish the existence and scope of the deviation, which was not, in any event, published in the *Federal Register* as would have been required. *La Gloria Oil & Gas Company v. United States*, 56 Fed. Cl. 211, 217-25 (2003).

Finally, with regard to Coastal's takings claim, this Court has repeatedly declined to dismiss such claims before trial, emphasizing the importance of resolving them on a fully developed record because of their "fact-intensive and case-specific" nature. *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 172 (2005). DESC asserts in its Reply that Coastal does not have a takings claim because DESC took title to the fuel under the fuel contracts. (DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 19.) While the Federal Circuit's holding in *Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1060 & n.2 (Fed. Cir. 2001), that the price of DESC's illegal fuel contracts was "unauthorized and unenforceable" undermines DESC's assertion, at a minimum the issue of whether DESC took title to the fuel requires a broader factual inquiry, which, in turn, will require discovery. DESC's further assertion that there could be no taking because Coastal has a breach of contract remedy is also undercut by *Barrett*. (DESC's Reply to Coastal's

DESC is simply disingenuous when it further asserts that discovery is precluded because Coastal's claims do not invoke an independently protected right. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 4, 9.) DESC may not so easily avoid its obligation to base price adjustments on "market-based references" as *Tesoro* expressly required, may not avoid its obligation to tell the truth about its prices, may not avoid its obligation to comply with the terms of its contracts that its own documents admit, and may not avoid its obligation to correct the parties' mistake about material aspects of DESC's prices. If protection of these rights cannot support discovery, then no claim in this Court may support discovery.

DESC's challenge to Coastal's compliance with RCFC 56(f) is equally ill-founded. DESC seeks to criticize Coastal for setting forth at length the specific factual allegations in its Second Amended Complaint for which it requires discovery; however, this is exactly what the authorities DESC cites require. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 11 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Co.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996), for the proposition that Coastal "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts").) DESC could not be more wrong when it asserts that Coastal failed to state how the discovery sought would help it oppose summary judgment. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 12.)[12] By tying its requests for discovery to the specific

---

Opp'n to DESC's Mot. to Dismiss at 19.) *Barrett* makes clear that the remedy for DESC's "unauthorized" fuel prices lies "off the contract" in *quantum valebant* and not in breach of contract. *Barrett*, 242 F.3d at 1060-61. At a bare minimum, as long as DESC disputes the existence of the implied-in-fact contract that supports *quantum valebant* (see DESC's Reply to Coastal's Opp'n to DESC's Mot. to Dismiss at 17), and until Coastal is permitted discovery to establish that implied-in-fact contract, DESC's request to dismiss Coastal's takings claim is premature.

[12] Nor may DESC assert that Coastal must propose a full-scale discovery plan in order to invoke its right to discovery under RCFC 56(f). Coastal has been afforded the opportunity to engage in discovery. It has not, for example, had the opportunity to obtain DESC's contract files or to propound interrogatories to identify who at DESC undertook what actions or were involved in making which decisions. DESC may not use the fact that it has thus far largely avoided discovery to argue that Coastal is required to set forth a full-scale discovery plan as if discovery has in fact been completed. Thus, DESC may

allegations in the Second Amended Complaint, Coastal has demonstrated the nexus between its discovery requests and the material allegations of fact it must establish to defeat DESC's motion (even assuming DESC is deemed to have properly challenged those allegations).[13]

Finally, DESC seeks to avoid discovery by wrongly asserting that Coastal has the burden of proof with respect to DESC's own motion. (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 12.) DESC asserts that, because Coastal bears the ultimate burden of proof in the case, Coastal should respond to DESC's motion by presenting declarations from all relevant former employees (and presumptively from DESC personnel). Only following the presentation of such declarations establishing Coastal's right to recovery, DESC asserts in circular logic, is Coastal entitled to the discovery necessary to obtain that evidence from those same third-party employees and DESC itself.

DESC's assertion is not only wrong, it is moot. As noted above, DESC has conceded that it no longer "challenges . . . the truth of the factual matters alleged in the [Second] Amended Complaint." (See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 11 (emphasis in original).) Why Coastal would have the burden to come forward with any evidence in the face of this concession and its essential withdrawal of its request for summary judgment under RCFC 56, DESC does not explain.

---

not use RCFC 56(f) to force Coastal to speculate as to whom at DESC has relevant knowledge and may need to be deposed and then later try to hold Coastal to those discovery limitations because Coastal's speculations were incorrect.

[13] DESC chides Coastal for not admitting DESC's allegations in paragraph 12 of its proposed findings of fact, which are premised with the statement that "[a]ll of the DESC solicitations at issue instructed . . ." The simple fact is that Coastal does not have "all of the solicitations at issue," nor has DESC included them with its motion. While, in response to this very proposed finding of fact, Coastal admits that DESC used the PMM to set prices and admits the language that is contained in some of those clauses (See Coastal's Statement of Genuine Issues at ¶ 12), Coastal cannot admit which versions of DESC's pricing clause DESC used in which contracts and in which years without further discovery and until all of the contracts and solicitations are provided.

In any event, DESC may not shift to Coastal the burden of prevailing on its own motion. As Coastal established in its Opposition to DESC's motion, in seeking summary judgment DESC must provide "affidavits or other evidence which, unopposed, would establish its right to judgment." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." *Celotex Corp. v Catrett*, 477 U.S. 317, 328 (1986). Only after the movant has provided evidence that, unopposed, would establish a right to judgment with respect to the material facts does the non-movant have an obligation to "proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions*, 833 F.2d at 1562.

Here, DESC ignores its own evidentiary burden to come forward with evidence that would entitle it to judgment (presumably in an attempt to preclude Coastal from invoking its right to test that evidence by discovery or otherwise). Instead, DESC seeks to impose on Coastal the obligation to proffer evidence to defeat DESC's motion, while at the same time denying Coastal the discovery it would need to obtain such evidence. This is contrary to RCFC 56. Because, for example, DESC offers no evidence challenging Coastal's allegations of misrepresentation or mistake (in fact, its motion does not even dispute these allegations), Coastal's allegations must be deemed true for the purposes of DESC's motion for summary judgment. (See Coastal's RCFC 56(f) Mot. at 3.) Indeed, DESC appears unable to support its own motion with declarations denying Coastal's allegations of misrepresentation, mistake, and breach of contract; instead, DESC seeks to force Coastal to unilaterally proffer evidence while DESC conceals its own employees and documents behind a dark curtain. Coastal will fully support its claims when either DESC presents evidence challenging them or at trial following discovery. Coastal does not consent to defend its claims, and has no obligation to do so,

on this vastly incomplete record while DESC withholds evidence and is unwilling even to submit sworn testimony challenging Coastal's allegations.

## CONCLUSION

DESC has undermined its own motion with its eleventh-hour concessions that it failed to satisfy its burden to produce evidence challenging the allegations in Coastal's Second Amended Complaint. DESC now states that it no longer "challenges . . . the truth of the factual matters alleged in the [Second] Amended Complaint."[14] Accordingly, this Court may proceed to consider DESC's pending dispositive motion based on a finding that the well-pleaded allegations in the Second Amended Complaint are deemed true.[15] Alternatively, should the Court deem any of Coastal's well-pleaded allegations in the Second Amended Complaint to be properly disputed with competent evidence or find that

---

[14] See DESC's Resp. to Coastal's RCFC 56(f) Mot. at 11 (emphasis original).

[15] See Coastal's RCFC 56(f) Motion at 3.

the evidence Coastal provides does not require denial of DESC's waiver defense, this Court should grant Coastal's motion here and refuse DESC's application for summary judgment or continue that motion to permit discovery.

s/J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Attorneys for Plaintiffs,
El Paso Merchant Energy – Petroleum Co.,
Coastal Aruba Refining Company, N.V.,
Coastal Eagle Point Oil Company, and
Pacific Refining Company

*Of Counsel:*

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006

John Loomis Shoemaker
El Paso Corporation
Suite 1839
1001 Louisiana Street
Houston, TX 77002

March 3, 2006